11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Mario Albert Alvarez

Appellant

Vs.                   No.
11-01-00376-CR   B 
Appeal from Dallas County

State of Texas

Appellee

 

The jury
convicted Mario Albert Alvarez of aggravated robbery, and the trial court assessed
his punishment at confinement for 45 years. 
We affirm.

                                                  Issue
Presented for Appellate Review

Appellant
presents only one issue.  He argues that
the evidence was Alegally
insufficient@ to support his conviction for aggravated
robbery.  The indictment charged that,
on or about January 4, 2001, appellant did:

[U]nlawfully then and there while in the
course of committing theft and with intent to obtain and maintain control of
the property of JIMMY DARBY, hereinafter called complainant, the said property
being a motor vehicle, without the effective consent of the said complainant
and with intent to deprive the said complainant of said property, did then and
there intentionally and knowingly cause bodily injury to said complainant, by
cutting complainant with a knife, and said defendant did then and there use and
exhibit a deadly weapon, to-wit: a knife and screwdriver.

 

The jury found that
appellant was guilty of the offense of aggravated robbery as charged in the
indictment.

                                                                    The
Evidence








Jimmy Ray
Darby was the first witness.  He
testified that he was 58 years old, that he works for his father, and that his
father owned and operated ADarby=s Maintenance Service and Demolition.@ 
Darby testified that he and his father renovate buildings, paint, and do
general contracting work in addition to demolition work.  Their office is in Fair Park.  On January 4, 2001, Darby was painting some
trim on an apartment complex near Washington Avenue.  At first he was working by himself, but he needed to hire a
helper to paint some of the upper trim. 
Darby went to a wine and beer retail store on Carroll Avenue and hired
appellant as a helper.  Appellant did
not speak English; his codefendant, Andrew Montez, came along as an
interpreter.  Darby said that appellant
was Asloppy@ and that he was Adripping paint all down on the wall.@  Darby was going to take
appellant and Montez back to where he found them, but Montez said that they did
not want to go there.  Montez asked
Darby to take them to Bryan Street. 
Then Montez asked Darby to pull over and stop.  Darby gave Montez and appellant $1.50, and Montez said that they
wanted more money.  Darby said that,
when he told appellant and Montez that he would take them to his father=s office, Montez put a screwdriver to Darby=s throat and told him to get out of the
truck.  Darby then identified a picture
of the truck and showed where each of them was sitting.  Appellant was in the front passenger=s seat; Darby was in the driver=s seat; and Montez was in the back seat
behind Darby.  Relevant portions of
Darby=s testimony on direct examination by the
assistant district attorney read as shown:

Q: What
happened next?

 

A: They
start...both of them was pushing me out of the truck.

 

[There was
testimony that the truck was stopped; that it was in Apark@ but the motor was still running; that after appellant and Montez got
Darby out of the truck, Montez got behind the wheel and started to drive off;
that the door was open, and that Darby grabbed Montez and held on to him.]    

 

Q: What
did [appellant] do once you grabbed Mr. Montez?

 

A: He
owned (sic) up a knife and reached across in front of Mr. Montez and cut me.  (Emphasis added)

 








Darby then
showed the jury the scar on the side of his cheek where he was cut that
day.  Darby estimated that appellant and
Montez were with him about 30 minutes that day, from the time Darby picked them
up until the time they forced him out of his father=s truck. 
Darby said that he went to the corner where Montez turned and that he
saw his father=s truck Asitting off in the restaurant through the window.@ 
Darby testified that he went to the hospital for the cut on his cheek
and that he received about eight stitches. 
Darby said that his father=s truck was damaged, and he identified pictures of the truck which were
taken after it came to a stop at the restaurant.  Darby testified that the police brought Montez to the truck, and
Darby identified him as one of the men who had taken his father=s truck. 
A few minutes later, Darby went with the police and identified appellant
as the other man.   

Darby also
admitted during his direct examination that he had Aquite a criminal record over the years.@  He
was convicted of crimes Aon and off throughout the sixties and seventies.@  His
convictions included possession of narcotics, forgery, theft, burglary of a
building, burglary of a habitation, and unauthorized use of a motor
vehicle.  Darby was released from prison
on parole (for a life sentence) in October of 2000.  Darby said that he Adon=t have any reason to lie on them@ and that he is Aone hundred percent sure@ that appellant and Montez are the men who
took his father=s truck.

During
cross-examination by the lawyer for Montez, Darby said that, when appellant Aseen that I wouldn=t let him go, he reached across Mr. Montez
and cut me in my face.@  Darby said that his face never hit the
ground; he agreed that his elbows were Apretty well torn up@ and that those injuries were Aall from hitting the pavement.@  Darby testified that he had
not been drinking that morning, and he agreed that he had been in prison about
a year prior to the time of trial and that he would be on parole for the rest
of his life.

During
cross-examination by appellant=s lawyer, Darby agreed that he was a member of Narcotics Anonymous and
that appellant Anever said anything to him.@ 
Darby denied that they were drinking on the job, and he said that they
did not have any problems until appellant started painting.  Darby was Adissatisfied@ with
the way appellant was painting.  

The next
three witnesses testified about the events when the stolen truck crashed into
the side of the restaurant.  Montez was
arrested at the scene of the wreck. 
Appellant ran from the truck and was later found by the police in an
area used by homeless people.








The last
four witnesses for the State were police officers.  Officer Tri Ngo of the Dallas Police Department testified that he
went to the Bangkok City Restaurant on the corner of Bryan and Peak Streets on
January 4, 2001, when he heard a report on the police radio.  Officer Ngo and three other officers had
been to lunch, and they were on their way back to the station.  Two of the officers searched on foot, and
the other two drove in the squad car looking for the suspects.  Officer Ngo 
found Montez and took him back to the wrecked truck.  Several witnesses identified Montez.  Officer Ngo was of the opinion that Montez
was intoxicated.

Sergeant
Raymond Baol of the Dallas Police Department was with Officer Ngo and two other
officers on January 4, 2001, when they heard a call on the police radio about a
robbery about two blocks away from where they were in the squad car.  Sergeant Baol testified that they went there
to assist.  Sergeant Baol and Officer
Ngo got out of the car to look for the suspects, and the other two officers
stayed in the squad car to do a Aperimeter search@ and to Aseal off the area.@  They
got a description of the suspects from witnesses at the scene.  Officer Ngo arrested one of the suspects,
and Sergeant Baol located the second suspect in a homeless camp near the
restaurant.  Sergeant Baol identified
appellant as the man he arrested. 
Sergeant Baol said that appellant did not appear to be intoxicated.  Sergeant Baol also testified that a knife
can be a deadly weapon.  On
cross-examination, Sergeant Baol testified that, when appellant was searched,
no weapons were found.  He also testified
that the homeless camp was Aa very trashed out area@ and that he was not aware of any weapons being found.

Officer
Wesley D. Stout of the Dallas Police Department was one of the four officers in
the squad car with Sergeant Baol and Officer Ngo.  Officer Stout stayed in the squad car when they made the
perimeter search, and he said that those officers did not find anyone who
matched the description of the suspects.

Officer
Gary L. O=Pry of the Dallas Police Department made
photographs of the truck, the complaining witness,  the restaurant, and the homeless camp.  He identified the pictures that were introduced into
evidence.  Officer O=Pry said that a knife was found in the truck,
but the complaining witness said that it was not the knife which appellant
used.  They searched the area, but that
knife was not found.

The State
rested, and the jury left the courtroom. 
The codefendant, Montez, told the trial court that he did not want to testify
and that there were Aa lot
of things@ that he did not remember.  The jury returned to the courtroom, and
appellant testified in his own defense.








Appellant
testified on direct examination that he was in the truck with Montez and Darby
on January 4, 2001.  Appellant said that
he had known Montez for about three or four months and that he had gone to that
Acorner...to pick up jobs.@ 
Appellant said that Darby hired him at Afifteen minutes before eight@ in the morning and that the arrangements were for him to work for
three hours at eight dollars an hour. 
Appellant said that Montez went with Darby and him.  Appellant testified that all three of them
were drinking beer.  Appellant said that
he drank Aonly one beer@ while he was painting.  After
he finished painting the four walls, appellant said that he got on a ladder Ato paint the trimming on top.@ 
Darby stopped him, and the three of them got back in the truck.  Appellant said that Darby paid him
$20.00.  Appellant said that Darby was Asuppose[d] to give me twenty-four, but he
discounted the beer@ which
they drank.  Appellant said that he was
not angry.  Appellant gave this
testimony about the fight between Montez and Darby:

Q: [G]oing
back to that fight between Montez and Mr. Darby, what did you observe?

 

A: That
they were wrestling because [Darby] didn=t want to pay the money that he owes him.

 

Q:
Okay.  And, did you ever cut or do
anything of any kind towards Mr. Darby?

 

A: I didn=t cut, I didn=t have a reason to do it.

 

Q: Were
you in the truck when it crashed into that restaurant?

 

A: Yes.

 

                                                           *    *   
*

 

Q: At some
point, Mr. Montez and Mr. Darby argued about money, didn=t they?

 

A: Yes.

 

Q: Was
that when the car was pulled over and stopped?

 

A: Yes.

 








                                                            *   *  
*                        

 

Q: At some point, you all
pushed Mr. Darby out of his own car [sic], didn=t you?

 

A: He is the one who
pushed himself out of the truck.  No
time did I push him.

 

Q: Mr. Darby pushed
himself out of his own car (sic)?

 

A: He tried to - - he
wanted to get out of there.

 

                                                            *   *  
*

 

Q: And, when [Darby]
stepped out of his truck, what did Mr. Montez do?

 

A: He accelerated.

 

During his
cross-examination, appellant agreed that Montez took off in the truck and Aended up driving into the Bangkok City
Restaurant.@  Appellant
testified that, when they hit the restaurant, he ran from the truck to the
homeless camp.  Appellant said that he Agot underneath the tarp...on the mattress@ because he was scared.  Appellant also admitted that he was on
probation for unlawful delivery of cocaine.      

                                              Sufficiency
of the Evidence

In
reviewing claims that the evidence is Alegally insufficient@ to support a conviction, an appellate court is required to Aview the evidence in the light most favorable
to the verdict@ and determine whether Aany rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.@ 
Jackson v. Virginia, 443 U.S. 307, 319 (1979); Mason v. State, 905
S.W.2d 570, 574 (Tex.Cr.App.1995), cert. den=d, 516 U.S. 1051 (1996).  The
jury is the exclusive judge of the credibility of the witnesses and of the
weight to be given to their testimony. 
Barnes v. State, 876 S.W.2d 316, 321 (Tex.Cr.App.), cert. den=d, 513 U.S. 861 (1994).








In
reviewing claims that the evidence is Afactually insufficient@ to support a conviction, an appellate court is to set aside the
conviction only if it is Aso contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust.@  Clewis v. State, 922 S.W.2d 126, 129
(Tex.Cr.App.1996).

The
evidence which has been quoted or summarized earlier in this opinion is both Alegally sufficient@ and Afactually sufficient@ to support the jury=s finding that appellant was guilty of aggravated robbery as charged in
the indictment.  Issue No. 1 is
overruled.

                                                                This
Court=s Ruling

The
judgment of the trial court is affirmed.

 

BOB
DICKENSON

SENIOR
JUSTICE

 

September 12, 2002

Do not publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of:  Arnot, C.J., and

McCall, J., and Dickenson, S.J.[1]











[1]Bob Dickenson, Retired Justice, Court of Appeals, 11th
District of Texas at Eastland sitting by assignment.